UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANAIKA QUAMINA,

        Plaintiff,

v.

LAUREN CRAMPSIE and JASON LOTKOWICTZ, Jointly and Severally,

        Defendants.

ECF CASE

No.: _____

COMPLAINT

JURY TRIAL DEMANDED

## NATURE OF THE ACTION

1. Defendant Lauren Crampsie is President of Ogilvy New York and the Global Chief Marketing Officer for Ogilvy & Mather and she, with her husband and co-Defendant Jason Lotkowictz, employed Plaintiff Anaika Quamina as their nanny.

2. Defendant Crampsie often speaks of empowering women and that women should support other women. And Ogilvy boasts of paying its workers fairly and rapidly responding to the COVID-19 pandemic. Yet Defendant Crampsie did not lawfully pay her children's nanny and fired her nanny because of her COVID-19 positive diagnosis and for complaining about not being paid overtime.

3. Despite regularly working more than 60 hours a week as she cared for their children at their New York City and Hamptons homes, Defendants Crampsie and Lotkowictz did not pay Plaintiff Quamina overtime premium pay; they sometimes failed to pay her every week, requiring Plaintiff Quamina to chase them down to get paid; and they failed to provide her notices required under the New York Labor Law.

4. Plaintiff Quamina asserts the following claims against Defendants Crampsie and Lotkowictz: retaliatory termination under the Fair Labor Standards Act

("FLSA") and New York Labor Law ("Labor Law"); failure to timely pay wages under the Labor Law; and disability discrimination under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

## JURISDICTION, VENUE & JURY DEMAND

5. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, and 1337, and has supplemental jurisdiction over the Labor Law, NYSHRL and NYCHRL claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. § 216(b).

6. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants are residents of this District and substantial part of the events or omissions giving rise to the claims occurred in this District.

7. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## ADMINISTRATIVE PROCEDURES

8. Following commencing this action, a copy of this Complaint will be served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, satisfying the notice requirements of the New York City Administrative Code.

## THE PARTIES

9. Plaintiff Quamina is and was, at all relevant times, an adult individual residing in Brooklyn, New York.

10. Defendant Lauren Crampsie is an individual who resides in New York, New York.

11. Defendant Jason Lotkowictz is an individual who resides in New York, New York.

## STATEMENT OF FACTS

Overview[1]

12. Defendants Crampsie and Lotkowictz employed Plaintiff Quamina as the nanny for their two children.

13. Defendant Lauren Crampsie is President of Ogilvy New York and the Global Chief Marketing Officer for Ogilvy & Mather.

14. Defendant Jason Lotkowictz is Vice President of Sales for Advance 360 Health.

15. Defendants decided to hire and fire Plaintiff Quamina, decided her compensation, decided her work schedule and decided her duties.

16. Plaintiff Quamina commenced employment with Defendants in or about May 2018.

17. Plaintiff Quamina duties included caring for Defendants' children, light house cleaning, cooking for the children, doing laundry, picking up groceries, and helping to clean Defendants' New York City and Hamptons homes.

18. Plaintiff Quamina spent more than 25% of her time performing physical labor.

Work Schedule

19. When Plaintiff Quamina commenced employment, her initial schedule was 8 hours per day for 5 days, totaling 40 hours.

---

[1] The headers are for organizational purposes only.

20. On or around November 27, 2018, her work scheduled changed to being from 7:00 a.m. to 7:00 p.m., Monday to Friday, totaling 60 hours.

21. Plaintiff Quamina also worked at least 8 weekends each year, usually when Defendants were at their Hamptons house.

22. Plaintiff Quamina also worked at Defendants' Hamptons house over the weekend when it was Defendant Crampsie's birthday.

23. When working Monday to Sunday, Plaintiff Quamina worked 84 hours.

24. Plaintiff Quamina did not have an uninterrupted 30-minute break. She, at most, got 10-15 minute breaks.

25. Defendants had no policy or practice to track the hours Plaintiff Quamina worked.

26. During the beginning of the COVID-19 pandemic, Plaintiff Quamina worked two weekends for Defendants in upstate New York.

Compensation

27. Defendants paid Plaintiff Quamina $23.00 per hour for all hours worked.

28. Defendants did not pay Plaintiff Quamina overtime premium pay for any hour she worked over 40 in a week.

29. When she worked weekends or stayed overnight at their New York City or Hamptons house, Defendants paid Plaintiff Quamina an extra $50.00 per day.

30. Defendants paid Plaintiff Quamina via Zelle transfers.

31. When paying her, Defendants did not give Plaintiff Quamina a written statement specifying the hours she was being compensated for, her hourly rate or the payroll period.

32. At least once a month, Defendants failed to pay Plaintiff Quamina at the end of the week, resulting in her having to wait more than 7 days to get paid and having to chase the Defendants to get paid.

Labor Law Notice and Wage Statement Violations

33. Defendants failed to provide Plaintiff Quamina with a Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when she was hired or at any point in her employment.

34. Defendants did not provide Plaintiff Quamina with an accurate wage statement under N.Y. Lab. Law § 195.3 with any wage payment.

Plaintiff Quamina's Termination

35. On December 12, 2020, Plaintiff Quamina tested positive for COVID-19 and told Defendants, that date, of her diagnosis.

36. Upon learning of this, Defendant Crampsie told her to quarantine for 14 days and that everyone will need to get tested "ASAP." Plaintiff Quamina responded that she is going to get tested a second time to be sure.

37. On or about December 15, 2020, 12:27 p.m., Plaintiff Quamina sent a text message to Defendants advising them that she, again, tested positive for COVID-19.

38. By 8:48 p.m., Defendants had yet to respond to Plaintiff Quamina's text message in which she advises them of her COVID-19 positive diagnosis.

39. On or about December 15, 2020, 8:48 p.m., Plaintiff Quamina sent a text message to Defendants, in which she states she is concluding that they have fired her because of her COVID-19 positive diagnosis since they did not respond to her earlier text message.

40. On December 24, 2020, Defendants responded to Plaintiff Quamina to state they should speak on Sunday, December 27, 2020 regarding "next steps."

41. On December 27, 2020, Defendants did not contact Plaintiff Quamina.

42. On December 28, 2020, Plaintiff Quamina, through her attorneys, complained that she had not been paid overtime under the FLSA and Labor Law and further complained that Defendants had fired her because of her COVID-19 positive diagnosis.

43. On December 31, 2020, Defendants' attorneys contacted Plaintiff Quamina's attorneys, stating they are looking into the allegations.

44. On February 9, 2021, Defendant Lauren Crampsie emailed Plaintiff Quamina that she and her husband have agreed to pay to all of the overtime, liquidated damages and interest Plaintiff Quamina is claiming is owed, totaling $41,480.00, and sent her a check for that amount.

45. Defendants refused to pay Plaintiff Quamina any amount for failing to pay her every week.

46. In her February 9, 2021 email, Defendant Lauren Crampsie insists she did not fire Plaintiff Quamina because of her COVID-19 diagnosis.

47. Between December 28 and February 9, 2021, Defendants never contacted Plaintiff Quamina to state they did not fire, that they want her to come back to work, or to make arrangements for her to return to work.

48. Between December 28 and February 9, 2021, Defendants hired a new nanny for their children, replacing Plaintiff Quamina.

49. Defendants cut off all communication with Plaintiff Quamina after she complained about not being paid overtime.

50. Since firing her, Defendants have, upon information and belief, hired a private investigator to follow Plaintiff Quamina.

51. Assuming *arguendo*, that they did not fire her because of her COVID-19 diagnosis, Defendants fired Plaintiff Quamina after she complained about not getting paid overtime.

52. No legitimate, non-discriminatory, non-retaliatory reason exists for Defendants' decision to terminate Plaintiff Quamina's employment.

53. As a consequence of firing her, Plaintiff Quamina was unable to buy food for the holidays for her family in Trinidad, as she has done in prior years. This has caused her meaningful emotional distress.

FIRST CAUSE OF ACTION
RETALIATION UNDER THE FLSA

54. Plaintiff Quamina repeats every allegation of the preceding paragraphs as if fully set forth herein.

55. Defendants were "employers" and Plaintiff Quamina was an "employee" within the meaning of the FLSA.

56. Plaintiff Quamina dealt with goods and materials that were produced for interstate commerce, including cleaning supplies.

57. Defendants had the power to hire and fire Plaintiff Quamina, set her pay and kept time records.

58. Plaintiff Quamina is a "domestic service worker" under the FLSA and is therefore covered by it.[2]

---

[2] https://www.dol.gov/agencies/whd/fact-sheets/79-flsa-private-home-domestic-service

59. Defendants employed Plaintiff within the meaning of the FLSA.

60. Defendants knowingly failed to pay Plaintiff Quamina the overtime wages to which she was entitled under the FLSA.

61. Defendants were required to pay Plaintiff Quamina no less than 1.5 times the regular rate at which she was employed for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

62. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff Quamina the proper overtime compensation for her hours worked in excess of 40 hours per workweek.

63. Defendants have not made a good faith effort to comply with the FLSA.

64. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

65. Plaintiff Quamina complained, through counsel, of Defendants' failure to pay her overtime, constituting a protected activity. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015).

66. Defendants fired Plaintiff Quamina for this protected activity

67. A causal connection exists between Plaintiff Quamina's protected activity and Defendants' decision to fire her, violating 29 U.S.C. § 215(a)(3).

## SECOND CAUSE OF ACTION
### RETALIATION UNDER THE NEW YORK LABOR LAW

68. Plaintiff Quamina repeats every allegation of the preceding paragraphs as if fully set forth herein.

69. Defendants are employers under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff Quamina.

70. Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff Quamina 1.5 times her regular rate of pay for all hours she worked in excess of 40.

71. Defendants failed to pay Plaintiff Quamina overtime premium pay for any hour she worked above 40 in a week, violating the Labor Law. 12 N.Y.C.R.R. § 142-2.2

72. Plaintiff Quamina complained, through counsel, to Defendants about their failure to pay her overtime.

73. Defendants fired Plaintiff Quamina for complaining about not being paid overtime, violating N.Y. Lab. Law 215(1)(a0.

74. Defendants have willfully violated the Labor Law by knowingly and intentionally retaliating against her.

## THIRD CAUSE OF ACTION
### DISABILITY DISCRIMINATION
### UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

75. Plaintiff Quamina repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

76. At all relevant times, Plaintiff Quamina was an "employee" and a "person" within the meaning of the NYSHRL and Defendants were "employers."

77. As an "employer" and supervisor of Plaintiff Quamina, Defendants are personally liable.

78. The NYSHRL prohibits employment discrimination based on a disability. N.Y. Exec. Law § 296(1)(a).

79. The NYSHRL was amended to include COVID-19 as a disability.

80. Defendants discriminated against Plaintiff Quamina by firing her because of her COVID-19 diagnosis.

81. As a result of Defendants' discrimination of her, Plaintiff Quamina has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, inconvenience, loss of enjoyment of life and medical expenses.

FOURTH CAUSE OF ACTION
DISABILITY DISCRIMINATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

82. Plaintiff Quamina repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

83. At all relevant times, Plaintiff Quamina was an "employee" and a "person" within the meaning of the NYCHRL and Defendants were "employers."

84. As an "employer" and supervisor of Plaintiff Quamina, Defendants are personally liable.

85. The NYCHRL was amended to include COVID-19 as a disability.

86. Defendants discriminated against Plaintiff Quamina by firing her because of her COVID-19 diagnosis, violating N.Y.C. Admin. Code § 8-107(1)(a).

87. As a result of Defendants' discrimination of her, Quamina has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, inconvenience, loss of enjoyment of life and medical expenses.

88. Defendants discriminated against Plaintiff Quamina with malice and/or reckless indifference to her rights under the NYCHRL.

FIFTH CAUSE OF ACTION
UNTIMELY PAID WAGES
UNDER THE NEW YORK LABOR LAW

89. Plaintiff Quamina repeats every allegation of the preceding paragraphs as if fully set forth herein.

90. Plaintiff Quamina was a "manual worker" within the meaning of N.Y. Lab. Law § 190(4).

91. As a manual worker, Defendants were required to pay Plaintiff Quamina "not later than seven days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a)(i).

92. With Defendants often paying Plaintiff Quamina every 14 days, they did not pay her for the first seven days she worked during each period within seven days at the end of that week, violating N.Y. Lab. Law § 191(1)(a)(i).

93. For violating N.Y. Lab. Law § 191(1)(a)(i), Defendants are liable to Plaintiff Quamina for liquidated damages, interest and attorneys' fees and expenses. N.Y. Lab. Law § 198(1-a); *Vega v. CM Assoc. Constr. Mgt., LLC*, 175 A.D. 3d 1144 (1st Dep't 2019).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Quamina respectfully requests the Court grant the following relief:

    a.    Accepts jurisdiction over this matter;

    b.    Impanels and charges a jury with respect to the causes of action;

    c.    An award for back pay and front pay under the FLSA, Labor Law, NYSHRL and NYCHRL in amount to exceed $100,000;

    d.    An award for liquidated damages under the Labor Law;

    e.    An award for punitive damages under the FLSA and Labor Law;

    f.    Awarding Plaintiff Quamina compensatory and emotional distress-based damages for the mental and emotional injury, distress, pain, suffering, and injury to her reputation in an amount to be proven exceeding $200,000;

    g.    Awarding punitive damages for the pain and suffering, anxiety, humiliation, loss of enjoyment of life, emotional distress in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination is repulsive to legislative enactments in the amount of at least $300,000;

    h.    Declaring that Defendants engaged in unlawful discriminatory practices prohibited by the NYCHRL and the NYSHRL in that they discriminated against Plaintiff Quamina based on her disability;

    i.    An award of pre-judgment and post-judgment interest;

    j.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

    k.    Awarding Plaintiff Quamina such other and further relief as the

-13-

Court may deem equitable, just, and proper to remedy Defendants' unlawful employment and discriminatory practices.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Quamina demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
       March 3, 2021

        LIPSKY LOWE LLP

        s/ Douglas B. Lipsky
        Douglas B. Lipsky
        420 Lexington Avenue, Suite 1830
        New York, New York 10170-1830
        212.392.4772
        doug@lipskylowe.com