# PECHMAN LAW GROUP PLLC
## ATTORNEYS AT LAW

**488 MADISON AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 583-9500**
**WWW.PECHMANLAW.COM**

March 19, 2021

**VIA ECF**

The Honorable Paul G. Gardaphe
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:  *Quamina v. Crampsie*, 21 Civ. 1878 (PGG) (BCM)
       (Letter re: Motion to Dismiss under FRCP 12(b)(6))

Dear Judge Gardaphe:

We represent defendants Lauren Crampsie and Jason Lotkowictz (collectively, "Defendants") in the above-referenced matter.  Pursuant to Section IV(A) of the Court's Individual Rules of Practice in Civil Cases, Defendants submit this letter to request a pre-motion conference and permission to file a motion to dismiss the Complaint (ECF No. 1) under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff does not consent to the proposed motion.  Defendants further request that mediation in the case be postponed pending a ruling on their motion to dismiss.

## I.      Factual Background[1]

The facts summarized in this letter come primarily from the Complaint.  Some facts detailed below come from documents and communications exchanged between the Parties, of which Plaintiff had actual notice and on which the Complaint heavily relies.  *See, e.g.*, ECF No. 1 ¶¶ 35–40 (referencing text messages), 42–43 (referencing communications between counsel), 44–46 (referencing email from Defendants to Plaintiff).  The Court can consider these extraneous communications and documents in the motion to dismiss context because Plaintiff relied on, had actual notice of, and referenced them in her Complaint.  *See, e.g., ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ("Where plaintiff has actual notice of all information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

---

[1]      For purposes of their proposed Motion to Dismiss only, Defendants rely on, without admitting, the facts alleged in the Complaint.

Hon. Paul G. Gardaphe
March 19, 2021
Page 2 of 5

Plaintiff claims she tested positive for COVID-19 on December 12, 2020.  ECF No. 1 ¶ 35; *see also* Ex. A at P000001–P000007.  On December 15, 2020, at 12:27 p.m., Plaintiff texted Defendants confirming she retested positive, then concluded in another text message eight hours later that Defendants "***have fired her*** because of her COVID-19 positive diagnosis since they did not respond to her earlier text message."  ECF No. 1 ¶¶ 38–39 (emphasis added); Ex. A at P000008.  On December 17, 2020, Crampsie replied: "Anaika we should talk after Christmas.  We hope you are continuing to be asymptomatic and as healthy as mentally possible during the Quarantine.  Please use this time to focus on your health."  Ex. A at P000008.  On December 22, 2020, Plaintiff asked to be paid sick days.  On December 24, 2020, Crampsie replied:

> Sorry for the delay in response. My Aunt Lilli passed away from Covid last Thursday and things have been very busy. Jason and I are fine to pay you for five days today and that would include Christmas Day as in my records I only have 3 paid days left for you. Have a nice holiday tomorrow. And we hope you are recovering. I suggest the three of us speak together Sunday regarding next steps. Thanks, Anaika.

*Id.* at P000009.  The Parties did not speak on December 27, 2020.  ECF No. 1 ¶¶ 40–41. Instead, on December 28, 2020, Plaintiff, through counsel, complained to Defendants about Plaintiff's alleged unpaid wages and "***that Defendants had fired her because of her COVID-19 positive diagnosis***."  *Id.* ¶ 42 (emphasis added).  As part of counsel's demand letter to Defendants, counsel attached a draft complaint stating that "Defendants ***immediately fired Plaintiff Quamina when she tested positive for COVID-19***."  Ex. B at P000003 ¶ 3 (emphasis added).  Counsel's email to Defendants directed them to contact him before January 6, 2021, "to discuss a confidential, pre-suit resolution.  We will, otherwise, proceed with filing the lawsuit."  Ex. B at P000001.

Through their attorneys, the Parties discussed Plaintiff's claims from December 31, 2020, to February 2021.  *See* ECF No. 1 ¶¶ 43–44.  On February 9, 2021, Defendants emailed Plaintiff a check for $41,480, constituting more than complete payment for her claims for alleged unpaid wages as calculated by her attorney.  *See* Ex. C.  Defendants also stated:

> On your attorney's allegation that we terminated you because you got COVID-19, we are surprised, shocked, and disappointed that you would make such a baseless and hurtful claim. We welcomed you into our family and treated you well, paying you $23 per hour, paying for your car service, giving you generous amounts of sick and holiday days, giving you guidance on marketing your catering business, giving you free clothes, allowing you to stay at our place whenever you needed to, and always treating you with respect and kindness. We don't know why you abandoned us during a very stressful period when our family needed you, but we did not terminate you in any manner and had no reason to terminate you. After working with us for two years,

> why would you take a late response to a text message as a
> termination? You knew that we were still working full time,
> my aunt was dying in the hospital, and the kids were out of
> school. We needed you, and you left us. That was your choice.
> We are sorry that you ended our relationship without
> speaking to us and without saying goodbye to the kids.
> Nonetheless, we wish you good health and good luck with
> your catering business.

*Id.* at P000001.  Plaintiff stopped working for Defendants on or before December 12, 2020.  *See* ECF No. 1 ¶¶ 35–47.  Plaintiff commenced this Action on March 3, 2021, asserting, as her sole federal law claim, that Defendants purportedly terminated her employment in retaliation for her demand for unpaid wages under the FLSA.  *See id.* ¶¶ 54–93.

## II.   Argument: Defendants Never Retaliated Against Plaintiff, and the Court Should Dismiss all Non-Retaliation Claims for Lack of Jurisdiction

Plaintiff fails to assert a claim for retaliation under the FLSA and NYLL, because, per her own allegations, she was purportedly fired before her attorney ever contacted Defendants about alleged violations of those statutes.  To assert a claim for retaliation under the FLSA and NYLL, Plaintiff must prove "(1) participation in a protected activity known to the defendant, like the filing of a[n] FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Jian Zhong Li v. Oliver King Enters., Inc.*, No. 14 Civ. 9293 (VEC), 2015 WL 4643145, at *2 (S.D.N.Y. Aug. 4, 2015) (quoting *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)); *see also Khurana v. Wahed Invest, LLC*, No. 18 Civ. 233 (LAK)(BCM), 2019 WL 1430433, at *15–16 (S.D.N.Y. Feb. 26, 2019) (applying same standard under NYLL), *rep. & rec. adopted*, 2019 WL 1432589, at *1 (S.D.N.Y. Mar. 29, 2019).

Plaintiff's counsel did not contact Defendants about Plaintiff's claims for alleged unpaid wages until December 28, 2020.  ECF No. 1 ¶ 42; Ex. B.  Before then, on December 15, 2020, Plaintiff texted Defendant Crampsie stating: "Now to feel like I have to worry about being sick and worried about missing work and ***worried about having a job***."  Ex. A at P000008 (emphasis added).  In other words, "she is concluding that [Defendants] have fired her because of her COVID-19 positive diagnosis since they did not respond to her earlier text message."  ECF No. 1 ¶ 39.  When counsel contacted Defendants on December 28, 2020, he alleged "***that Defendants had fired [Plaintiff] because of her COVID-19 positive diagnosis***."  *Id.* ¶ 42 (emphasis added).  Counsel's draft complaint reiterates this: "Defendants ***immediately fired Plaintiff Quamina when she tested positive for COVID-19***."  Ex. B at P000003 ¶ 3 (emphasis added).  Counsel's email to Defendants directed them to contact him, not Plaintiff, before January 6, 2021, "to discuss a confidential, pre-suit resolution.  We will, otherwise, proceed with filing the lawsuit."  *See* Ex. B at P000001.  In sum, Plaintiff consistently stated that she had already been fired before and up to the point her attorney contacted Defendants on December 28, 2020.

Defendants did not undertake any action that disadvantaged Plaintiff in response to receiving her attorneys' demand letter.  If anything, Defendants' actions *advantaged*

Hon. Paul G. Gardaphe
March 19, 2021
Page 4 of 5

Plaintiff: They paid her all of her alleged unpaid wages owed as calculated by her attorney, eliminating those claims pre-filing. *See, e.g.*, *Fast v. Cash Depot, Ltd.*, 931 F.3d 636, 639 (7th Cir. 2019); Ex. C. Left without a federal jurisdiction hook, Plaintiff now attempts to contradict all of her prior statements, claiming in the alternative that her alleged termination in mid-December was somehow caused by Defendants' receipt of her demand letter in late December. ECF No. 1 ¶ 51. The facts of this case simply do not lend themselves to pleading in the alternative, however. Plaintiff repeatedly stated, both personally and through her attorney, that she was already fired before her attorney contacted Defendants. In sum, Plaintiff is rewriting history to add a retaliation claim under the FLSA in an attempt to stay in federal court. This should not be permitted: The Court should dismiss the FLSA and NYLL retaliation claims with prejudice and decline to exercise jurisdiction over all remaining state law claims.

Finally, in the alternative, the Court lacks subject matter jurisdiction over Plaintiff's fifth claim under NYLL § 191(1)(a)(i). *See* ECF No. 1 ¶¶ 89–93. Plaintiff makes five claims in the Complaint: two retaliatory discharge claims under NYLL and FLSA; two discriminatory discharge claims under the New York State and New York City Human Rights Laws; and the alleged late payments claim under the NYLL § 191(1)(a)(i). Her first four claims arguably arise out of the same nucleus of operative facts: Plaintiff's alleged termination. The fifth claim, however, concerns the timing of Plaintiff's wage payments during the employment relationship, a matter entirely disconnected from her alleged termination. *See* 28 U.S.C. § 1367(a); ECF No. 1 ¶¶ 89–93. Because the fifth claim rests on facts that are entirely separate from and unrelated to her other claims, including her sole federal law claim, the Court should dismiss it outright for lack of subject matter jurisdiction. *See, e.g.*, *Guerra v. Trace Corp.*, No. 18 Civ. 625 (ER), 2020 WL 7028955, at *6–7 (S.D.N.Y. Nov. 30, 2020) (dismissing state law claims for lack of jurisdiction as unrelated to federal claims).

The fifth claim also calls for this Court to rule on undecided questions arising purely under the NYLL, with conflicting rulings issued by different courts on whether employees can recover damages for late payment claims. *Compare Vega v. CM & Assocs. Const. Mgmt., LLC*, 175 A.D.3d 1114 (1st Dep't 2019) (allowing NYLL § 191(1)(a)(i) claims) *with IKEA U.S. Inc. v. Ind. Bd. of Appeal*, 240 A.D.2d 785 (2d Dep't 1997) (finding no recovery for claims in certain circumstances); *see also Phillips v. Max Finkelstein*, 115 N.Y.S.3d 866 (County Ct. 2019) (same); *Hussain v. Pak. Int'l Airlines Corp.*, No. 11 CV 932 (ERK)(VVP), 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) (finding no private right of action). As such, a state court should address Plaintiff's fifth claim, because it is unrelated to Plaintiff's other claims and raises questions focused purely on state law interpretation.

[CONTINUED ON NEXT PAGE]

Hon. Paul G. Gardaphe
March 19, 2021
Page 5 of 5

For all of the foregoing reasons, Defendants respectfully request a pre-motion conference and permission to file a motion to dismiss the Complaint.  Defendants further request that mediation be postponed pending briefing and a ruling on their motion.

Respectfully submitted,


*s/ Gianfranco J. Cuadra*
Gianfranco J. Cuadra

cc:  Counsel for Plaintiff (via ECF)

Enclosures